Charles H. Mead et al., Appellants, *v.* The Westchester Fire Insurance Company, Respondent.

To justify a court of equity in changing the language of a written instrument sought to be reformed, in the absence of fraud, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof should be so clear and convincing as to leave no room for doubt.

In an action to reform a policy of fire insurance upon a dwelling-house, the alleged mistake was that an adjoining building was intended to be insured instead of the dwelling described. It appeared that the applicant had owned both buildings and had lived in the one described; that defendant's agent had insured the furniture therein; that he had insured the building claimed to have been intended and the policy was then outstanding. He had the description of both buildings upon his books. The applicant had removed from the dwelling to the adjoining building, which was occupied as a dwelling and paint shop, and did not, in fact, own the former. The agent, however, testified that he supposed that he did. The premium upon the dwelling was one and one-half per cent; upon the building it was two and one-half. The application was, by letter for a policy on "my house." The agent, thereupon, made out the policy in question upon the dwelling, charging one and one-half per cent. The building was burned. The only direct evidence to establish that defendant intended to insure the building was that of the agent who, in answer to the question, "To what property *do* you understand this letter * * * referred?" answered, to the property burned. Upon his cross-examination he testified, in substance, that at the time and before the policy was issued he was in doubt, but his idea was it was on the dwelling and he so made out the policy. *Held,* that the facts did not show an intent, on the part of defendant, to insure the building burned, and did not justify a reformation of the policy.

(Argued February 25, 1876; decided March 21, 1876.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiffs entered upon the report of a referee and directing a new trial.

This action was brought to reform a policy of fire insurance issued by defendant through its agent, one Dales, to Thomas Foley, loss, if any, payable to plaintiffs, and to recover upon the policy thus reformed.

The description of the property in the policy is as follows: " A two-story frame dwelling situated on the north side of Cornwall road at Canterbury, Orange county, New York." The property alleged by plaintiffs to have been intended was adjoining that described, and the alteration desired was by inserting, in place of the description in the policy, the following: " A two and a-half story frame building and the additions attached and occupied as a dwelling and paint shop, with stable in the basement, situated on the north side of turnpike at Canterbury, Orange county, New York." The facts upon which the claim for reformation were based appear in the opinion.

*C. F. Brown* for the appellants. Defendant was liable on the parol agreement to insure Foley's house. (*Bunten* v. *Orient Mut. Ins. Co.,* 8 Bosw., 448; *Solmes* v. *Rutgers F. Ins. Co.,* 2 Abb. Ct. App. Cas., 279; *Ellis* v. *Alb. City F. Ins. Co.,* 50 N. Y., 402.) The mistake of the agent in writing the policy constituted no defence to this action. (May on Ins., 144, § 142; id., 132, § 132; *Plumb* v. *Cat. Mut. Ins. Co.,* 18 N. Y., 392; *Meadoncraft* v. *Stand. F. Ins. Co.,* 61 Penn., 91; 4 Abb. Ct. App. Cas., 279; 1 id., 257; 8 Bosw., 448; *Hughes* v. *Mer. Mut. Ins. Co.,* 55 N. Y., 270; *Rowley* v. *Em. Ins. Co.,* 36 id., 550.) Defendant is estopped by the act of its agent from asserting that the property destroyed was not covered by the policy. (*Lawrence* v. *Brown,* 5 N. Y., 394; 18 id., 392; 36 id., 550; *Carroll* v. *Charter Oak Ins. Co.,* 1 Abb. Ct. App. Cas., 316; *Goit* v. *Nat. Pro. Ins. Co.,* 25 Barb., 189; *Leslie* v. *Knick. L. Ins. Co.,* 2 Hun, 616.)

*C. Frost* for the respondent. As the minds of the parties did not meet there can be no reformation of the contract. (*Bap. Ch.* v. *Bklyn. F. Ins. Co.*, 28 N. Y., 161; *Kent* v. *Manchester*, 29 Barb., 595; *Ledyard* v. *Hart. F. Ins. Co.*, 24 Wis., 496; 1 Alb. L. J., 277; *Hughes* v. *Mer. Ins. Co.*, 55 N. Y., 265.)

Rapallo, J. The power of courts of equity to reform written instruments is one in the exercise of which great caution should be observed. To justify the court in changing the language of the instrument sought to be reformed (except in case of fraud), it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. Losing sight of these cardinal principles, in the administration of this peculiar remedy, would lead to the assumption of a power which no court possesses, of making an agreement between parties to which they have not both assented.

We think that the General Term were right in holding that the proofs in the present case failed to come up to the required standard. It is reasonably clear that the plaintiffs intended to obtain an insurance upon the building which was afterwards burned. But the question is, whether it is shown that the defendant intended to insure that building.

The policy was issued on the 1st of July, 1871, to Thomas Foley, on his own application, loss, if any, payable to Mead and Taft, the plaintiffs. The property insured was described in the policy as " his two-story frame dwelling, situate," etc. The policy was issued by Mr. Dales, the agent of the defendant. It appeared 'in evidence that Foley had occupied this dwelling-house for four years prior to the 1st of April, 1871; and that the furniture therein had been insured by Mr. Dales on the application of Foley. Foley owned the adjoining building, which had also been insured by Mr. Dales, in the office of the Home Insurance Company, for $2,000, and this policy was outstanding when the insurance now in question

was effected. In April, 1871, Foley removed from the dwelling-house into this building, but Dales testified that he supposed that Foley owned the dwelling-house also, though, in fact, he did not. Dales had on his books the descriptions of both buildings. The dwelling-house was described as a " two-story frame dwelling, situate," etc., and the adjoining building as a " two and a-half story frame building, and the additions attached, occupied as a dwelling and paint shop, with stable in the basement," situate, etc. The established rate of premium upon this building, and that which was then being paid thereon, was two and a-half per cent per annum ; that upon the dwelling adjoining was one and a-half per cent. These were the circumstances existing at the time of the application for the policy in question. The application was made in writing by Foley to Mr. Dales, and was in the following words : " I would like you to make me out a policy of $800 on my house, in favor of Mead & Taft, in case of loss, in the cheapest company." Thereupon, Mr Dales made out a policy for $800 on the dwelling-house, charging premium at the rate of one and a-half per cent, which policy he delivered to one of the plaintiffs, who paid the premium. The adjoining building, in which the paint shop was kept, was afterwards burned, and the object of this action is to have the policy reformed so as to describe that building.

The only direct evidence to establish that the defendant intended to insure the building which was afterwards burned is the testimony of Mr. Dales, who, on his direct-examination, was asked : " To what property *do* you understand this letter of Foley's referred ? " To which he answered : " To the property which he occupied, which has since been burned, and described in my book."

On his cross-examination he was asked : "At the time of issuing this policy, and before it was issued, did you not suppose the application referred to the building Foley formerly occupied ? A. I was in doubt about it ; the simple question was, if it was on the building in which he lived, it was two and a-half per cent, and if on the one he formerly occupied,

one and a-half per cent.   Q. You issued it for one and a-half; which was it on?   A. My idea was it was on the one he formerly occupied."

The purport of this evidence, taken as a whole, is, we think, that at the time of the trial, and in view of the facts which had then been developed, the witness was satisfied that Foley intended, by his letter, to refer to the building in which the paint shop was.   But that at the time of issuing the policy the witness concluded that the dwelling-house was the one desired to be insured, and that he intentionally made out the policy to cover this building, charging the lesser rate of premium.   These facts do not justify the reformation of the policy.

If the defendant had intended to insure the building which was burned, and had received the premium for that insurance, but by a clerical error the wrong description had been inserted in the policy, a case would be made out for reformation, but those facts are not established.   We cannot make a contract for the defendant which it did not, in fact, make, even though the failure to make the insurance which the plaintiffs desired was owing to the defendant's misapprehension of the application.

The order of the General Term should be affirmed, and judgment absolute rendered against the plaintiffs on their stipulation, with costs.

All concur.

· Order reversed and judgment accordingly.