GEORGE H. BARTHOLOMEW, RESPONDENT, *v.* THE MERCANTILE MARINE INSURANCE COMPANY, APPELLANT.

*Reformation of a written contract — the evidence of a mistake must be clear and unquestionable.*

In order to justify the reformation of a policy of insurance issued by a company, upon the ground that by mistake it does not conform to the agreement made by the parties to it, the evidence establishing the mistake must be unquestionable. It must be so clear and convincing as to leave no room for doubt.

This rule was applied in this case, and a judgment, entered upon the verdict of a jury, reforming a policy of insurance issued by the defendant to the plaintiff, and allowing him to recover upon the policy as so reformed, was set aside upon the ground that the evidence was insufficient to entitle him to the relief sought.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to reform a policy of insurance issued by defendant and when reformed to recover damages for a loss sustained to the property insured. The plaintiff was the owner of the property. On the 8th day of April, 1881, the defendant issued and delivered to him a policy of insurance by which it insured "John H. Miller against loss or damage by fire" on the stock in trade, etc., "loss, if any, payable to John H. Miller as his interest in equity may appear." The plaintiff claims that he made a bargain with one Stowell, agent of the defendant, for insurance, and that by mutual mistake the name of John H. Miller was written, or rather that this was done by Stowell's mistake and that he did not notice the error. The issue was submitted to the jury and they found that the agreement was that the policy should be in plaintiff's name.

The only witnesses, as to the verbal agreement, were the plaintiff on his behalf, and Stowell for the defendant. Stowell testified positively that the plaintiff said Miller had an interest in the property and that he wanted the policy in the name of the real owners, not in his own name; that he made out the policy and delivered it to him and they read it together and he took it; that in the afternoon the plaintiff came in and said the policy was wrong in saying *his* goods and *his* store; that it should be *the* goods and *the* store. And also that he wanted the clause "loss if any," etc., as above mentioned inserted, and that these corrections were made. He testified that after the fire the plaintiff said Miller never owned any of the goods, but that he, the plaintiff, had some debts hanging over him and if he had had the policy in his name the creditors would have levied.

On the contrary, the plaintiff testified to facts tending to show that the verbal contract was that the policy should be issued to him, loss payable to Miller, to secure him for borrowed money. The plaintiff admits that he was insolvent; that he did business under his own name as agent, meaning agent for himself; that some ten days before this policy was issued he took out another policy in his name as agent. The fire occurred February 6, 1882. In March, Miller forwarded proofs of loss to the company, and they were returned; and in June the plaintiff sent proofs of loss, and upon non-payment commenced this action.

*M. A. Sheldon*, for the appellant.

*J. Sanford Potter*, for the respondent.

LEARNED, P. J.:

Since the union of law and equity in one court and under one form of practice, we think it has become more important than ever to understand and maintain true principles as to the reformation of contracts. That remedy in equity, in its nature, necessarily involved an exception to the general rule that parol evidence of prior negotiations could not be admitted to vary a written agreement. And the soundness of that rule may be seen from the consideration that, after verbal negotiations, it must be deemed that the parties have come to the final conclusion expressed in the written instrument. The equitable doctrine of reformation was adopted where, by mutual mistake, or by mistake on one side and a fraudulent advantage taken on the other, the instrument was different from that which the parties intended it should be. (*Bryce* v. *Lorillard*, 55 N. Y., 240.) And a fundamental rule in respect to this doctrine is that the evidence to show that a mistake had been made must be unquestionable (1 Story Eq., § 157); "irrefragible," as said by Lord THURLOW, in *Lady Shelburne* v. *Inchiquin* (1 Bro. C. C., 338); so clear and convincing as to leave no room for doubt (*Mead* v. *West. Ins. Co.*, 64 N. Y., 453); proved as much to the satisfaction of the court as if admitted. (*Ford* v. *Joyce*, 78 N. Y., 618.) We need cite no further expression to show how strong the evidence must be to sustain a reformation.

In the present case the plaintiff's evidence utterly fails to reach that high degree. His case rests solely on his own testimony, and he is an interested witness. He is contradicted on the material point by the testimony of the defendant's agent, who has no pecuniary interest; although, doubtless, he sympathizes with the defendant.

Furthermore, the plaintiff is contradicted by the evidence which he himself gives, showing that, for fear of creditors, he did not desire to take out a policy in his own name, thinking that it would lead them to discover the truth, viz.: that the business which he was conducting under the name of agent was really his own.

We might further say that there is plainly no evidence of

266   PEOPLE ex rel. GALE v. SUPERVISORS RENS. CO.

THIRD DEPARTMENT; NOVEMBER TERM, 1884.

mutual mistake, because it is not pretended that Stowell drew the policy differently from what he intended. And there is no evidence that any fraud was committed, or that Stowell took advantage of the plaintiff, as was the case in *Albany City Savings Institution* v. *Burdick* (20 Hun., 104; 87 N. Y., 40.) But without discussing the point whether the plaintiff might not have had a reformation of the policy, if his proof had been sufficiently convincing, we are of the opinion that he failed to make a case which entitled him to that relief.

The judgment should be reversed upon the facts and a new trial granted, costs to abide the event.

Present—LEARNED, P. J., and BOCKES, J.; LANDON, J., not acting.

Judgment reversed on the facts, new trial granted, costs to abide event.