(39 Misc. Rep. 508.)

### ROUSSEL v. LUX.

(Supreme Court, Special Term, New York County. December, 1902.)

1. VENDOR AND PURCHASER—SUFFICIENCY OF TITLE—BUILDING RESTRICTIONS.
   Where a contract for the sale of land calls for a fee simple, that there is an enforceable restriction on the land, preventing any building out to the street line, authorizes the vendee to reject the title.

2. SAME—REFORMATION OF CONTRACT.
   A contract for the sale of land, calling for a fee simple, will not be reformed for an alleged mutual mistake as to the character of the title to be given, where there is no clear and convincing proof of such a mis-take, and what the real agreement was.

3. SAME—NOTICE.
   Where a contract for the sale of land provided for a fee simple, the fact that, before the contract was drawn by the vendee's agent, he had possession of a policy insuring the title, in which was set up a building restriction, with a reference to the book and page of the record, was in-sufficient evidence to show that the vendee intended the contract to be drawn with reference to such building restriction, so as to authorize a reformation of the contract to conform therewith.

Action by Charles J. Roussel against Henrietta L. Lux to recover a deposit paid on a contract for the sale of land. Judgment for plain-tiff.

Alexander & Green, for plaintiff.
Fromme Bros., for defendant.

SCOTT, J. This is an action to recover back the deposit paid upon a contract for the sale of a lot of land in West Fifty-First street, in the city of New York, and to recover the expenses incurred in ex-amining the title, and for a decree that the amount found to be due to plaintiff be declared to be a lien upon the property described in the con-tract. On December 15, 1900, the parties to this action entered into

a written contract whereby the defendant agreed to sell and convey to
the plaintiff a lot of land, with the building thereon, on the north side
of West Fifty-First street. She agreed to execute and deliver to him
a proper deed containing a general warranty and the usual full
covenants for the conveying, and assuring to him the fee simple of the
said premises, free from all incumbrance, except yearly agreement with
present tenant, and the privilege of defendant to remain in the apart-
ments then occupied by her until the following February. Upon the
signing of this contract, plaintiff paid defendant $1,000, and he has in-
curred considerable expense in having the title examined. At the
time fixed for closing the title, and again in his complaint, the plain-
tiff has raised several objections to defendant's title. All but two of
them, however, were waived on the trial. One of the objections is that
the property was subject to a perpetual easement or restriction which
would forever prevent any building erected upon the land from being
built out to the street line. It appears from the evidence that in the
year 1879 one Henry Clifford owned the lot described by the contract,
having a frontage of 25 feet on the street, and James A. Stryker and
Ambrose Stryker owned a plot adjacent thereto on the east, having a
frontage of 125 feet on the street. None of these lots were then built
upon, but there were a number of other houses upon the northerly side
of the same block, all of which were set back at a uniform distance
of about 5 feet from the street line. Clifford and the Strykers entered
into an agreement in writing wherein they recited their respective
ownerships as above, and that they had agreed with each other that,
when their lots were improved by having a house or houses built
thereon, such part of each of said lots as lies between Fifty-First street
and a line parallel thereto, and equally distant therefrom with the line
of the front of the dwelling houses on the northerly side of Fifty-First
street, adjoining their premises, should be left and kept as and for an
open space or court similar to the open space or courts in front of the
aforesaid several dwelling houses then erected on the said northerly
side of Fifty-First street. They then mutually agreed with each other
that they had laid out and appropriated, and thereby did lay out and
appropriate, such parts of the lands owned by them, respectively, as
are above described, as and for an open space or court, to remain un-
obstructed forever, after the said lots shall have a house erected there-
on, otherwise than by the necessary steps for entrance platforms, and
pedestals and railings connected therewith, and inclosing the same,
and the foundations and copings upon which the said railings may be
placed. They further, for themselves and their respective heirs and
assigns, mutually covenanted, promised, and agreed with each other
that the said space or court in front of the said lots of land so to be
taken from each of them should forever be and remain an open space
or court, and should never at any time thereafter be appropriated for
or occupied by any edifice, building, or wall, nor be obstructed other-
wise than by the necessary steps for entrance platforms, and pedestals
and railings connected therewith and inclosing the same, and the
foundations and coping upon which said railings may be placed. It
was further mutually covenanted and agreed between the said parties
that their agreements should be, and they were declared to be, cov-

enants running with the lots of land owned by the parties, respectively, and with the title thereto, and should be equally obligatory upon the heirs and successors of the several respective parties, and upon all and every person and persons who should thereafter become and be the owner or owners of the said lots, respectively. This agreement was duly recorded in the register's office.

It cannot be doubted that by this agreement Clifford and the Strykers created mutual and reciprocal easements over their respective lands that no building should ever be so erected upon any of the lots as to cover the entire lot, and, if the present or future owner of any lot covered by the agreement should undertake to so build, he would undoubtedly be liable to an action at the hands of any owner of either of the other lots. Assuming this agreement to be enforceable,—and I see no reason why it is not,—a purchaser of any lot would be deprived of the beneficial use of a considerable portion of it. It needs no argument to show that such an agreement creates an incumbrance upon the title, and that a deed of the property subject to such restrictions would not convey to plaintiff what the defendant contracted to give him.

The defendant, apparently recognizing the infirmity of her title, asks by her answer that the contract of sale be reformed by excepting from the agreement to give a deed which should convey to plaintiff the fee simple of the premises free from all incumbrance, the restrictions and covenants contained in the above-mentioned agreement between Clifford and the Strykers. Her allegation in this regard is that the attention of plaintiff was called to this agreement before he entered into the contract, and that he made the contract with full knowledge thereof, but that the restrictions were not excepted from the contract by mutual mistake and mutual oversight of plaintiff and defendant, and the error of the party who drew the contract. The reformation of agreements by reason of the mutual mistake of the parties who made them is a well-recognized branch of equity jurisdiction, but, to succeed in obtaining a decree for such a reformation, the burden always rests upon the party seeking it to establish by clear, positive, and convincing evidence that there was a mutual mistake, and what the real agreement was. The proof must be so convincing as to leave no room for doubt. Mead v. Westchester Fire Ins. Co., 64 N. Y. 453; Christopher & T. St. R. R. Co. v. Twenty-Third St. R. Co., 149 N. Y. 51, 43 N. E. 538. The evidence relied upon by the defendant falls far short of satisfying these stringent rules. It rests wholly upon the fact that, before the contract was drawn, one Robertson, who was plaintiff's agent in the transaction, and who drew the contract, received from defendant a policy of insurance of her title, issued by a title company, to which was attached a schedule purporting to show estates, defects, or objections to title, and liens, charges, and incumbrances thereon, which do or may now exist, and against which the company did not guaranty or agree to indemnify. In this schedule appeared assessments not confirmed, taxes and water rents for several specified years, and the agreement between Clifford and the Strykers, which was described merely by its date, and the liber and page of its record. There was no hint or

suggestion in the policy as to the nature or purport of the agreement. The defendant never spoke to the plaintiff or Robertson with reference to it. There is no evidence that either the plaintiff or Robertson ever even read the schedule in which reference was made to the agreement, and they both swear that they never did. The defendant's whole contention is that inasmuch as Robertson had the policy in his possession before he drew the contract of sale, and the policy mentioned the agreement, he must have intended to so draw the contract as that the title should be conveyed subject to the terms of the agreement. As well might it be claimed that he meant that the property should be conveyed subject to the unpaid taxes, because they, too, were mentioned in the policy. Written instruments, carefully and deliberately drawn and executed, are not to be transformed upon such slight and unsubstantial evidence as is presented in this case. There must be judgment for the plaintiff as prayed in the complaint, with costs, and an extra allowance of $70.

Judgment for plaintiff, with costs, and an extra allowance of $70.