## MEAD v. SARATOGA & W. FIRE INS. CO.

(Supreme Court, Appellate Division, Third Department.    March 11, 1903.)

1. INSURANCE—MISSTATEMENT IN APPLICATION—ESTOPPEL TO SET UP.

Where the local agent of an insurance company, soliciting a risk on premises used as a meat market, and knowing the character of the premises, filled out the application so that it appeared the premises were used as a dwelling, and insured did not discover the mistake until after a fire, the company was estopped to rely on the untruthfulness of the description as a defense to an action on the policy.

Appeal from Trial Term, Rensselaer county.

Action by William H. Mead against the Saratoga & Washington Fire Insurance Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and CHASE, CHESTER, and LYONS, JJ.

Ostrander & Salisbury (William S. Ostrander, of counsel), for appellant.

Lansing & Holmes (John B. Holmes, of counsel), for respondent.

CHASE, J. The defendant is a co-operative fire insurance company. It does business through agents, but assumes no liability until applications for insurance are approved by its executive committee. During the summer of 1899 plaintiff erected a two-story shingle-roofed meat market in Corinth, N. Y. The meat market included an office, a refrigerator, and also other fittings suitable for the business of selling meat. One P. was the agent of the defendant at Corinth. His duties were to solicit insurance. He took applications for insurance, on blanks furnished by the defendant, fixed the amount of insurance, and the premiums to be paid therefor. He forwarded the applications so taken by him to the defendant, and, if they were approved by defendant's executive committee, the policies were sent to P., who delivered the same and collected the premiums. He also had authority to renew such insurance by indorsement as provided by the defendant's by-laws. A few days before the 22d day of August P. came to the plaintiff and asked him when he would have his meat market finished, and further asked that he might be allowed to insure it for him. On the 22d day of August, the meat market being substantially finished, P. again asked to be allowed to insure it, to which the plaintiff consented; whereupon P. took one of the blank applications furnished by the defendant, and asked certain questions therefrom, and wrote therein the answers given by the plaintiff. Plaintiff then signed the application, and he did not see it again until after the building was burned. All of the answers written in the application were truthfully given and recorded, but at the time the application was delivered it did not contain a description of the property to be insured. The agent did not say that he was going to add anything to the application, but

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1004.

thereafter he took a printed slip of paper, also furnished by the defendant, headed, "Village Dwelling, Furniture and Barn Form," and in such printed slip correctly filled out the description of the meat market, and attached it to and made it a part of the application. The application so completed by the agent was forwarded to the defendant, and a policy was written, on which policy was attached a duplicate of the printed and written slip that had been so attached to the application. The part so attached described the property, and following the words of description, were printed the words: "And all furniture, and appurtenances attached thereto while occupied as a dwelling." The policy was delivered to the plaintiff, and he put it away among his papers, and he did not know of the reference therein to the building being occupied as a dwelling until after the fire. On the 14th day of December, 1900, the meat market burned. The defendant refused to pay the amount of the policy, or any part thereof, and this action was brought to have the policy reformed and corrected, by striking therefrom the words "while occupied as a dwelling," and inserting in place thereof "while occupied as a meat market," and for the amount of the loss.

The question in this case is not one of identity of property insured, as in Sanders v. Cooper, 115 N. Y. 279, 22 N. E. 212, 5 L. R. A. 638, 12 Am. St. Rep. 801, Saunders v. Agricultural Insurance Co., 167 N. Y. 261, 60 N. E. 635, and in Hughes v. Mercantile Mutual Insurance Co., 55 N. Y. 265, 14 Am. Rep. 254. No property other than the meat market was mentioned or considered in the negotiations for the insurance. The description of the property in the application and policy is applicable to the meat market, and not applicable to any other building. The statement in the application and policy that the defendant claims was misleading is not in the description of the building itself, but in referring to the risk as continuing while the building is "occupied as a dwelling." So far as such reference to the building describes it as a dwelling it was untrue. The building was wholly unoccupied when the application and policy were written. About three weeks thereafter it was occupied as a meat market, and continued to be so occupied until the fire. The agent P. was actually employed on the building, and knew the purpose for which it was being erected, and the way it was in fact occupied when completed. If the defendant is chargeable with the carelessness of P. in making out the application, or with his knowledge in regard to the building, the recovery by the plaintiff in the trial court was right, and should be sustained.

The nature of the business of insurance companies makes it necessary for them to have many local representatives. Without such local representatives, their business would be confined to that obtained by their executive officers, and principally to the locality where their home office is situated. Life, fire, and other insurance business is principally obtained through paid representatives and solicitors. Such representatives and solicitors are stimulated to persistent effort to obtain business by having their compensation made dependent upon the business obtained. The plaintiff in this case was thus solicited by the defendant's agent to become a member of and insurer in the defendant company.

The courts of this state have for several years quite uniformly held that insurance companies were estopped from setting up the falsity of statements made in applications for insurance where such applications had been obtained by soliciting agents, and the false statements had been inserted in the application by the fraud or carelessness of such soliciting agent, and not by any fault or misstatement of the person assured. In Rowley v. The Empire Insurance Co., 36 N. Y. 550, the court, referring to Plumb v. The Cattaraugus County Mutual Insurance Co., 18 N. Y. 392, 72 Am. Dec. 526, say that the rule which had theretofore prevailed in this state relating to warranties in policies of insurance had been changed. The court further say:

"It is not establishing a harsh or unreasonable rule in reference to insurance companies to hold that their agents authorized 'to take applications for insurance' are acting within the scope of their authority in everything which they do which may be necessary to complete such applications. * * * Any other rule would be fraught with mischief. Insurance companies send out an army of agents to solicit business. Property holders are waited upon by them at their residences, and it is not going too far to say that many of the applicants would be unable to make a proper application and survey to meet the rigid and elaborate requirements of these corporations, while experience shows that they are not expected to do so. Hence these agents render such services as are necessary to enable the contracting parties to attain their respective objects—the one to insure, and the other to become insured, against fire. To hold that, in performing these preliminary labors touching the very business which must necessarily be transacted before a policy can be effected, the insurance broker becomes the agent of the applicant for insurance, would seem to be an unnecessary and undesirable refinement."

In Mowry v. Rosendale, 74 N. Y. 360, the court say:

"The principle that, if the statements in the application relied upon as breaches of warranty are inserted by the agent for the insurers without any collusion or fraud upon the part of the insured, the insurer is estopped from setting up their error or falsity as breach of warranty, seems now well settled."

To the same effect are Miller v. Phœnix Mutual Life Ins. Co., 107 N. Y. 292, 14 N. E. 271; Bentley v. Owego Mutual Benefit Association (Sup.) 5 N. Y. Supp. 223; O'Brien v. Home Benefit Society, 117 N. Y. 310, 22 N. E. 954; Bennett v. Agricultural Ins. Co., 106 N. Y. 243, 12 N. E. 609; Kenyon v. Knight Templars Aid Association, 48 Hun, 278; Quinn v. Mutual Life Ins. Co., 10 App. Div. 483, 41 N. Y. Supp. 1060; Peters v. U. S. Industrial Ins. Co., 10 App. Div. 533, 42 N. Y. Supp. 348; and many other cases.

Where the agent undertakes to prepare the application of the insured, or makes any representations to him as to the character or effect of the statements of the application, he will be regarded in doing so as the agent of the company, and not of the insured. Am. & Eng. Ency. of Law, vol. 16 (2d. Ed.) pages 909, 945, 946.

In May on Insurance (3d Ed.) vol. 1, page 211, referring to insurance agents, it is said:

"He is appointed by the company to facilitate and promote their business. To this end he is furnished with the necessary blanks, which, after they are filled up, he is to forward to the company's office. Of course, this filling up must be in such manner as to make the application fit for its purpose, and valid as the basis of the contract. The questions propounded

therein are those upon which information is desired. These are often very numerous, and not unfrequently quite general and indefinite, and susceptible of being answered briefly and substantially, or with greater or less minuteness of detail. How briefly and with what degree of minuteness, the applicant may not know. The agent must be presumed to be clothed with the power to say when the question is satisfactorily answered—that is, with sufficient fullness. * * * Is the building to be insured a shop or a store, all the facts being made known and the answer being a matter of doubt. may not the agent, instead of incumbering the papers with a multitude of detail, agree for the company that it is either, according as he thinks the facts show it to be? * * * There must be, it would seem, an incidental power lodged in the agent adequate to the explanation of the proper description of the property or interest to be insured, the meaning of the words and phrases used in the questions, and the application of answers to the subject-matter, so far as they may be necessary to perfect the instrument and render it fit for its purpose, and promote the usefulness and efficiency of the agency. In short, the agent may do in this behalf what could be done at the home office if the application were filled up there upon conference with the officers. * * *"

In Richards on Insurance, page 26, it is said:

"Where a written application is used, the applicant generally answers the questions orally, and the agent is expected to fill in the blanks, and is in fact intrusted with some power and discretion in this regard, like other agents engaged in canvassing for the benefit of their principal."

An insurance company will not be permitted to avoid a policy issued by them upon the ground that the insured failed to notify them of certain facts of which the policy required notice, if it is shown that the company or its agent had full knowledge of those facts at the time of issuing the policy. The knowledge of the facts is sufficient notice. Rowley v. Empire Ins. Co., 3 Keyes, 557; Am. & Eng. Ency. of Law, vol. 16 (2d Ed.) page 943; McNally v. Phœnix Ins. Co., 137 N. Y. 389, 33 N. E. 475; Skinner v. Norman, 165 N. Y. 565, 59 N. E. 309, 80 Am. St. Rep. 776.

The court in this case, without objection, submitted to the jury the whole question, directing them to return a general verdict for the defendant, or for the plaintiff, fixing the amount of the recovery. The jury found for the plaintiff, and no objection is now made as to the form of the verdict. The verdict accords with our sense of justice and right as between the parties, and we are also of the opinion that it is in accordance with the rules of law applicable to this case as already established by the courts of this state.

Judgment should be affirmed, with costs. All concur.