DOUGHERTY et al. v. LION FIRE INS. CO. et al. (Supreme Court, Appellate Division, Third Department. May 11, 1904.) Action by Rose E. Dougherty, as executrix of Daniel Dougherty, deceased, and others, against the Lion Fire Insurance Company and others. From a judgment for defendant (84 N. Y. Supp. 10), plaintiffs and certain defendants appeal. Affirmed.

PER CURIAM. Affirmed, with costs, on opinion of COCHRANE, J.

HOUGHTON, J. (dissenting). I cannot concur in the conclusion of the trial court upon the facts evidently assumed by him to have been established in this case. The complaint sets forth the facts with respect to the issuing of the policy, and it seems to me that the decision could have been placed upon much broader grounds than a mere mutual mistake. Not only by his opinion does the court say that he gives full credit to the testimony of Rose E. Dougherty, but by his findings he expressly finds that she told the son of the agent issuing the policy that her mother was dead. With this fact established in the case, it seems to me quite clear that the policy

should have been reformed. The agent, Mc-Causland, had insured the property in the name of Catherine Dougherty, the mother of Rose and the other parties to the action, who was the owner at the time of her death. The agent's son, acting for him, solicited re-insurance when the term of the old policy was about to expire. He was then informed of the death of the owner, and replied that it would make no difference, and subsequently accepted the premium, and delivered to Rose, with whom the negotiation was had, an insurance policy in the name of the dead mother. This was not a mutual mistake. It was a mistake on Rose's part, and a fraud on the part of the agent, which under all the authorities entitles the party deceived to a reformation. It is not enough for the agent to say that at the time he issued the policy he did not understand, or did not know, that Catherine, the mother, was dead. He should have known. He had been informed of the fact, and it was his business to remember, and in law he will be considered to have done so. Merely expressing a doubt to an insurance agent as to whether or not there has been a change in the property insured is sufficient to put him upon inquiry; and whatever is notice enough to excite attention is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it. Reynolds v. Commerce Fire Insurance Co., 47 N. Y. 604; Skinner v. Norman, 165 N. Y. 570, 59 N. E. 309, 80 Am. St. Rep. 776; Mead v. Saratoga & Washington Fire Insurance Co., 81 App. Div. 282, 287, 80 N. Y. Supp. 885. It is no new thing to reform an insurance policy, even on lesser grounds than appear in the present case. Where a husband, in behalf of his wife, directs reinsurance of her property, and the agent issues the new policy in the name of the husband, a reformation of the policy will be directed, even after a loss. McCoubray v. St. Paul F. & M. Insurance Co., 50 App. Div. 416, 64 N. Y. Supp. 112. So, too, a life insurance policy will be reformed, where the name of the beneficiary was not stated as agreed. Steinbach v. Prudential Insurance Co., 62 App. Div. 133, 70 N. Y. Supp. 809. This latter case was reversed by the Court of Appeals in 172 N. Y. 471, 65 N. E. 281, but solely upon the ground that additional persons should have been made parties to the action. In Mead v. Westchester Fire Insurance Co., 64 N. Y. 453, Rapallo, J., says: "If the defendant had intended to insure the building which was burned, and had received the premium for that insurance, but by a clerical error the wrong description had been inserted in the policy, a case would be made out for reformation." In Hay v. Star Fire Insurance Co., 77 N. Y. 240, 33 Am. Rep. 607, Church, C. J., says: "It was bad faith on the part of the defendant to change so radically the terms of the policy, and deliver it simply as a policy renewing the old one, without notice of the change. A party whose duty it is to prepare a written contract, in pursuance of a previous agreement to prepare one, materially changing the terms of such previous agreement and delivering it as in accordance there-with, commits a fraud which entitles the other party to relief according to the circumstances presented. Equity will reform a written instrument in cases of mutual mistake, and also in cases of fraud, and also where there is a mistake on one side and fraud on the other." In Keith v. Globe Insurance Company, 52 Ill. 518, 4 Am. Rep. 634, a member of a partnership firm applied for insurance on partnership property, but the agent issued a policy in the name of the individual partner alone, and a reformation was held necessary and proper. The thing to be insured, and which the defendant solicited for pay the privilege of doing, was the building. He sent his son to solicit reinsurance. Notice to his son was notice to him. The son being informed, as he was, of the death of Catherine, the former owner, it became the duty of the agent to issue a valid policy running to the proper owners, or to issue none at all. When he did issue a policy void by its very terms, because it ran to a dead person, and took the premiums thereon, it was a fraud on his part. The defendant should be deemed to have insured, in payment of the premium it received, the real parties in interest, the actual owners of the property; and if the written instrument which the agent delivered did not contain the name of the real parties, he having been put on his inquiry to ascertain them, the plaintiffs should not suffer. The defendant is doing no more by paying the loss than it would have done had the policy contained the names of the heirs of Catherine. The mistake of Rose was in supposing that the policy ran to the proper persons, and that the agent had delivered to her a valid policy. Whether she ought to have discovered sooner than she did the terms of the policy is another question, which can be considered upon a retrial. It is manifest that the trial court considered himself bound to the strict rules governing the establishing of a mutual mistake. From the treatment of the case by the trial court, it is quite clear that, had he not considered himself bound by the strict rules governing the establishing of a mutual mistake, and had he assumed the broader ground that the agent was guilty of an actual or constructive fraud in issuing and delivering such policy as he did, the trial would undoubtedly have resulted in granting the reformation. To my mind justice will be much better subserved by the granting of a new trial than by affirming the present judgment. The respondent insists that the dismissal of the complaint was proper on another ground; but the only ground upon which the trial court disposed of the case was upon the question of reforming the policy. If the defendant has a good defense upon the merits, it can present it on a retrial, when the contract shall be reformed.

CHASE, J., concurs.