.ligence as a bailee, but we think the language is far too general in the clause itself to bear him out. The agreement of the company was to transport the horse at a reduced rate upon the condition that its value should be as stated, .and we would fail to give adequate effect to the agreement and its consider-.ation if we should hold that the company had not limited the extent of its liability in all events."

In the case now before us there is no special contract. The shipment was made in the ordinary course of business, and there is nothing to indicate that the contracting parties ever intended to ·give the defendant immunity for its own negligence. It is violated ·duty that furnishes the ground of an action for negligence (Brewer v. Railroad Co., 124 N. Y. 59, 65, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647), and the damages in an action of negligence cannot be fixed by the contract for carriage, unless the defendant show his immunity on the face of his agreement (Nicholas v. Railroad Co., 89 N. Y. 370, 375).

The judgment appealed from should be affirmed, with costs. All . ·concur.

---

STEINBACH v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. INSURANCE—SUIT ON POLICY—DEFECT OF PARTIES—WAIVER.
   Where the executor of insured was not made a party in a suit to reform and recover on an insurance policy in favor of a debtor of the deceased, the insurance company's failure to answer or demur on that ground is a waiver of the defect.

2. SAME—REFORMATION AND RECOVERY IN SAME ACTION.
   Where an insurance company, through its agent, agreed that a policy should be issued on the life of plaintiff's debtor, payable to plaintiff, who was to pay the premiums thereon, and plaintiff received and retained the policy, and paid the premiums, relying on the agent's representations, plaintiff was entitled to have the contract reformed so as to be made payable to her according to the agreement, and to recover thereon in the same action.

3. SAME—EVIDENCE—DECLARATIONS OF AGENT.
   Conversations of an insurance agent at the time of and prior to the making of an application for a policy, and his declarations at the delivery thereof, are admissible in a suit to reform the policy.

4. SAME—PRINCIPAL AND AGENT—FRAUD OF AGENT.
   An insurance company, having collected and retained the premiums on a policy, is chargeable with the fraud or mistake of its agent in inducing the making of the contract and acceptance of the policy, regardless of whether it had knowledge of such fraud.
   Patterson and McLaughlin, JJ., dissenting.

Appeal from special term, New York county.

Action by Caroline Steinbach against the Prudential Insurance Company of America. From a judgment for plaintiff, defendant appeals. Affirmed.

Appeal by defendant from a judgment entered in the clerk's office of the county of New York on the 9th day of July, 1900, reforming the policy of insurance set forth in the complaint by striking therefrom the words "unto the executors, administrators, or assigns of the person named as the insured in this policy," and by substituting in place thereof the words "unto Caroline Lampp [the plaintiff], her executors, administrators, or assigns," and allowing plaintiff to recover thereon the sum of $164.90, principal and inter-

est, together with costs and an extra allowance. The evidence showed that one Max Fehrman was indebted to plaintiff in the sum of $403.70. The policy in question was taken out upon the life of Fehrman at the suggestion of plaintiff, and with his consent, to secure said indebtedness to her. Fehrman boarded with plaintiff, and at the time she held by assignment two other policies on his life, issued by the same company, upon which, at his request, she had been and was paying the premiums. Plaintiff made known the fact to defendant's local agent that Fehrman was owing her, and asked if she could have his life insured for her benefit, to which he replied that he would see about it. Two weeks later he informed her that it could be done, but that he would have to see Fehrman first, and that Fehrman would have to undergo a medical examination. He asked her how much she wanted the insurance for, and whether she could pay a premium of 50 cents per week, to which she replied that she was not able to pay that amount, but could pay 25 cents per week. At his suggestion she arranged for an interview between him and Fehrman at her house, at which she and her husband were present. At that time he asked Fehrman questions, and filled out a blank application, which Fehrman signed. Speaking of the application, she testified: "I saw the paper. I did not read it through. I did not understand everything, but I saw it, and I saw that he (meaning Fehrman) signed it. I said, 'Have I got to write my name?' He (meaning the agent) said: 'It is not necessary. The small policies are all made out the same. If it is a big policy, then they have the name,—the party's name; but the small policy it is all made out the same;' and he said, 'Who keeps the policy and pays the premiums gets the money, if anything happens.'" Subsequently the doctor came, examined Fehrman, and he and Fehrman signed a paper. The agent subsequently brought plaintiff the policy in question, and informed her that Fehrman had passed the examination, and that she would have to pay 25 cents on a new book (evidently a pass book relating to the premiums on this policy), which he brought her. She paid the premium, and regularly paid the premiums thereafter, aggregating $10.50, until the death of Fehrman. Plaintiff testified that the agent delivered to her "a new book and the policy, and he said to keep this policy and the book. I looked at it, and I said, 'Don't I have to have my name in it?' He said: 'No, the policy is made out for a small amount. It is not necessary. Who keeps the book and the policy and pays the premiums gets the money, if something happens.'" The testimony of plaintiff was corroborated by her husband as to what occurred at the time the application was signed. The written application contained no question requesting information as to the name of the beneficiary, and no suggestion was made therein concerning the same. The local agent of the company was not called as a witness, and the testimony of plaintiff and her husband was not controverted. The district superintendent testified that the local agent delivered the application to him, and that the policy was made out in Newark, N. J. He also testified that the local agent was authorized to take applications. The policy is not printed in full in the record, but the following extract therefrom is given: "Seventh. No agent has power in behalf of the company to make or modify this or any contract of insurance; to extend the time for paying a premium beyond the time allowed by the rules of the company, which in no case shall exceed four weeks; to waive any forfeiture; or to bind the company by making any promise or representation or receiving any information. These powers can be exercised only by the president or secretary of the company, and will not be delegated." The death of Fehrman, and due proofs thereof to defendant, were admitted.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

William Ogden Campbell, for appellant.
Walter Large, for respondent.

LAUGHLIN, J. The trial court, upon this evidence, found that plaintiff was not designated as beneficiary in this policy through

mistake or fraud of defendant or its officers or agents, and that the policy was accepted by plaintiff by mistake, and upon the supposition and in the belief that it was payable to her.  The policy, as issued, did not express the contract as made, and the defendant gave no explanation as to how it came to make the policy payable to Fehrman's estate.  It being within the power of the company, by calling its local agent or otherwise, to show its authority for issuing the policy in a form different from that required by the contract as testified to by plaintiff and her husband, the court would have been warranted in finding that the company was guilty of fraud, and it is not in any position to successfully impeach the finding as made.  Hay v. Insurance Co., 77 N. Y. 240, 33 Am. Rep. 607.  Fehrman's executor or administrator should have been joined (Conkling v. Davies, 53 How. Prac. 409); but the defect has been waived by defendant's failure to answer or demur upon that ground.  The reformation of the insurance policy as to the name of the beneficiary, and recovery thereon in the same action, are warranted by precedent.  McCoubray v. Insurance Co., 50 App. Div. 416, 64 N. Y. Supp. 112.  In the case at bar the agreement was that a policy should be issued by the defendant upon the life of Fehrman, payable to plaintiff as beneficiary, and that she should pay the premiums thereon.  This agreement was definite and certain, but it was not correctly embodied in the policy subsequently issued by defendant.  Plaintiff, however, received and retained the policy, and paid all premiums thereon, relying upon the agent's representations previously made, and then reiterated, that, it being a small policy, the party holding and paying the premiums would receive the insurance.  In these circumstances plaintiff was entitled to have the contract reformed, and to recover thereon.  McCoubray v. Insurance Co., supra; Maher v. Insurance Co., 67 N. Y. 283; Pitcher v. Hennessey, 48 N. Y. 415.; Kirchner v. Machine Co., 135 N. Y. 182, 31 N. E. 1104; Kilmer v. Smith, 77 N. Y. 226, 33 Am. Rep. 613; Welles v. Yates, 44 N. Y. 522.  In Pitcher v. Hennessey, supra, the court say:

"It is claimed on the part of the plaintiff that, if the mistake occurred because both parties misunderstood the meaning of the terms 'risk of navigation,' both parties believing that these terms would include the risk in question, then no reformation of the contract can be had.  This claim is not well founded.  When parties have made an agreement, and there is no allegation of any mistake in it, and in reducing it to writing they, by mistake, either because they did not understand the meaning of the words used, or their legal effect, failed to embody their intention in the instrument, equity will grant relief by reforming the instrument, and compelling the parties to execute and perform their agreement as they made it; and it matters not whether such a mistake be called one of law or fact."

The conversations with defendant's agent before and at the time the application was made and at the time of the delivery of policy to plaintiff was received under defendant's objection and exception that the evidence was incompetent, and not binding upon it.  It is now too well settled to require the citation of authorities that conversations with an insurance agent at the time of and prior to the making of an application are competent in an action to reform

the policy. The declarations of the agent at the time of delivering the policy constituted merely a reiteration of the assurances he had given plaintiff previously. He was the agent of the company to deliver the policy and collect the premiums, and the conversation was in relation to delivering the policy, and before it had its inception by being received and retained by plaintiff. It was competent, at least, as tending to relieve plaintiff from the charge of negligence in accepting the policy. The company, having collected and retained the premiums, is chargeable with the fraud or mistake of its agent—constructively at least—in inducing the making of the contract and the acceptance of the policy, regardless of whether it had knowledge of such fraud. McGuire v. Insurance Co., 7 App. Div. 575, 40 N. Y. Supp. 300; McCoubray v. Insurance Co., supra; Maher v. Insurance Co., supra; Stewart v. Insurance Co., 155 N. Y. 257, 49 N. E. 876; Mayer v. Dean, 115 N. Y. 561, 22 N. E. 261, 5 L. R. A. 540; Bridger v. Goldsmith, 143 N. Y. 424, 38 N. E. 458; Bennett v. Judson, 21 N. Y. 238; Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62.

The judgment should be affirmed, with costs.

O'BRIEN and INGRAHAM, JJ., concur.

McLAUGHLIN, J. (dissenting). On the 21st of September, 1896, one Max Fehrman applied to the defendant for an insurance upon his life, he then signing a written or printed application therefor. Upon this application the defendant, on the 19th of October of the same year, issued a policy, by which it agreed to pay—providing the terms and conditions of it were complied with—upon his death a sum specified therein to his "executors, administrators, or assigns." On the 19th of September, 1897, Fehrman died, leaving, him surviving, a widow and one child. Some time after his death this plaintiff brought an action against the defendant—of which, so far as appears, the widow of Fehrman or his personal representative had no notice—to reform the policy by striking out of it the provision by which it was made payable to the executors, administrators, or assigns of Fehrman, and inserting in the place thereof a provision making the same payable to this plaintiff, her executors, administrators, or assigns; and upon the testimony of the plaintiff alone, supported in a slight degree by the testimony of her husband, a judgment has been rendered which this court is about to affirm, permitting such reformation to be made, and, in addition thereto, giving her a judgment against the defendant for the amount of the policy. I am unable to agree with the other members of the court to the conclusion thus reached. A written contract ought not to be changed, except upon evidence which clearly and satisfactorily establishes that a mutual mistake has been made by the parties to it, or that a mistake has been made by one induced by the deception or fraud of the other. When parties have reduced their agreements to writing, that writing is presumed to contain what they intended should be done (Avery v. Society, 117 N. Y. 451, 23 N. E. 3), and the only mistake which will warrant a court of equity

in reforming a contract in writing must be one made by both parties to the contract, or it must be the mistake of one by which his intentions have failed of correct expression by reason of a fraud practiced upon him by the other. Bryce v. Insurance Co., 55 N. Y. 242, 14 Am. Rep. 249; Maher v. Insurance Co., 67 N. Y. 283; Kirchner v. Machine Co., 135 N. Y. 182, 31 N. E. 1104. There is no such evidence in this case. There is no evidence which will justify even an inference that the defendant, when it issued its policy in question, did not make it payable to the identical person intended, or that it was not made payable to the person intended by Fehrman: nor is there any evidence that fraud or deception was resorted to by defendant for the purpose of deceiving the plaintiff, or that she was, in fact, deceived. On the contrary, it appeared that when the policy was delivered to her she knew, according to her own testimony, that it was not made payable to her, and she called the attention of defendant's agent to that fact. It is true, she says that he then told her if she had possession of the policy, and paid the premiums, she would get the money called for by the policy when Fehrman died. But she could not have been misled by this statement, if made. She could read, and therefore must have known from the following provision in the policy that the agent had no authority to make such statement, and could not bind defendant in this way:

"No agent has the power in behalf of the company to make or modify this or any contract of insurance; * * * to waive any forfeiture or to bind the company by making any promise or representation or receiving any information. These powers can be exercised only by the president or secretary of the company, and will not be delegated."

It also appeared that at the time of Fehrman's death she had possession of two other policies issued by this same defendant upon Fehrman's life, upon which she held assignments to her. After his death she brought an action against the defendant upon such policies, and upon its motion Fehrman's widow was made a party, and it was permitted to pay the money into court. Thereupon the action was compromised, the money being divided between this plaintiff and Fehrman's widow. The result of that action is suggestive, at least, of the reason why a reformation should be sought of the policy in suit. Viewing the evidence offered on the part of the plaintiff in the most favorable light possible, as I understand the law, she is not entitled to the relief which she has obtained. What is the evidence? It consists, as already indicated, of her own testimony, corroborated in a slight degree by that of her husband. The husband testified that he married the plaintiff after the death of Fehrman; that when the policy in suit was issued he and Fehrman boarded with the plaintiff; to use his own language, that he "was present on several occasions when there was some business transacted between Mrs. Steinbach and Max Fehrman, when the insurance man was there; also when she loaned him the money. This happened on several occasions. Sometimes this was done at my request. Mrs. Steinbach loaned Fehrman the sum of $363 that I know about,—money loaned and table board together. In November, 1896,

Fehrman went to Milwaukee. Before he went we had a talk about this money. I showed him in a book that it was so much, and he said, 'All right, if I go I will pay you.'" He further testified that he heard a conversation between one Sator, the agent who procured Fehrman's application for insurance, and the plaintiff, about the policy; that "she said that Mr. Fehrman owed her so much money; that he was not able to pay yet, and that it was better she take a policy on his life; that she would be anyhow sure of anything happening to him she would get some money. * * * I saw Fehrman sign some papers. The insurance agent took his name, age, trade, and residence, and when he was ready Fehrman put his name upon it. My wife asked how it is she must not put her name upon it, and then Mr. Sator said it was not necessary in those small policies. Who has the policies and pays the premiums on it gets the money." The plaintiff testified: That she had a conversation with Mr. Sator. That he came to her house to collect premiums due on policies issued by the defendant upon Fehrman's life, and that she then asked him "if he could insure Fehrman; that he owed me some money,— if that could be done. He said he would see about it. * * * He came about two weeks again. He told me himself, when he came in, that it could be done." That some time thereafter a meeting took place, in which Fehrman made an application. That she saw Fehrman sign the paper. That when he signed it she asked Sator, "Have I got to write my name?" to which he responded: "It is not necessary. The small policies are all made out the same. If it is a big policy, then they have the party's name, but the small policies are all made out the same." And he says, "Who keeps the policies and pays the premiums gets the money, if anything happens." That he subsequently delivered the policy to her, and she then looked at it, and said, "Don't I have to write my name in it?" to which he replied: "No; the policy is made out for a small amount. It is not necessary. Who keeps the policy and the book and pays the premiums gets the money if something happens;" and she then and thereafter paid the premiums, amounting in all to $10.50. This is the evidence, and, as it seems to me, it falls far short of what is necessary to justify the reformation of a policy of life insurance after the death of the person insured. Policies of life insurance are usually taken for the purpose of protecting one's wife and family, and, if such policies can be changed upon evidence as slight as this, then it is not difficult to see that they afford little or no protection whatever. Upon the merits, therefore, it seems to me that this judgment should be reversed.

I am also of the opinion that the judgment should be reversed for another reason. The action is in equity, and the court, before reforming the contract, should have required that the personal representatives of Fehrman be made parties to the action. It is true, the question of defect of parties was not raised by demurrer or answer, and the defendant, by omitting to take the objection, either by demurrer or answer, is "deemed to have waived it." Code Civ. Proc. § 499. But the rule which prevailed in the courts of equity prior to the adoption of the Code—that the court would not pro-

ceed to a decree until all necessary parties were before the court—has been preserved by section 452, which provides that "the court may determine the controversy as between the parties before it, where it can do so without prejudice to the rights of others, or by saving their rights; but, where a complete determination of the controversy cannot be had without the presence of other parties, the court must direct them to be brought in." Osterhoudt v. Board, 98 N. Y. 239. While the section of the Code does not in terms prohibit the court from determining the controversy unless all the necessary parties are brought in, that is implied, and it certainly is the better practice in equitable actions. Peyser v. Wendt, 87 N. Y. 322; Sherman v. Parish, 53 N. Y. 483; Mahr v. Society, 127 N. Y. 452, 28 N. E. 391. In the case last cited, and which in many respects is much like the case now before us, it was held that it was not enough for the court to direct that the necessary parties be brought in, but that the court should have refused to proceed to a determination of the controversy so as to affect their rights until they had, in fact, been brought in; and this is the general rule in equitable actions. All persons having an interest in the subject-matter of the action should be made parties, in order to prevent a multiplicity of suits, as well as to secure a final determination of the rights of all the parties having an interest in the subject-matter of the litigation. "It is," says Story in his work on Equity Pleadings (paragraph 72), "the constant aim of courts of equity to do complete justice by deciding upon and settling the rights of all persons interested in the subject-matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled to obey it, and also that future litigation may be prevented." And for that reason, says Judge Vann, in Mahr v. Society, supra, "not only all persons whose rights may be affected by the judgment should be brought into court, but all whose presence is essential to the protection of any party to the action." Gray v. Schenck, 4 N. Y. 460; Russell v. Clark, 7 Cranch, 69, 3 L. Ed. 271; Picquet v. Swan, 5 Mason, 562, Fed. Cas. No. 11,135; Fell v. Brown, 2 Brown, Ch. 218. The policy in suit was payable to the executors, administrators, or assigns of Fehrman. At the time of his death he had not assigned it. The legal title to it, therefore, is in his personal representatives, and, before any adjudication is made by which the defendant is compelled to pay the amount of the policy to any other person than such legal representatives, they should be brought into court, in order that their rights may be determined, to the end that the defendant may not be subjected twice to the same liability.

I am of the opinion that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J., concurs.