HENRY SUNDHEIMER, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

1. TRIAL — DIRECTION OF VERDICT, WHEN IMPROPER. The direction of a verdict in any case, where the right of trial by jury exists, constitutes reversible error if the evidence presents a question of fact.

2. EVIDENCE PRESENTING QUESTION OF FACT. The evidence upon the trial of an action to recover damages sustained to plaintiff's premises by flooding, alleged to have been caused by defendant's negligence in the construction and maintenance of a sewer, examined and held to present a question of fact which should have been submitted to the jury.

*Sundheimer* v. *City of New York*, 77 App. Div. 53, reversed.

(Argued November 11, 1903; decided November 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 23, 1903, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Augustus Van Wyck* and *Jacob Friedman* for appellant. This being an appeal from a direction of a verdict by the court, the appellant is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be deemed established in his favor. (*Ladd* v. *Ins. Co.*, 147 N. Y. 478; *McDonald* v. *M. St. R. Co.*, 167 N. Y. 66.) The evidence suggests many questions of fact which the jury should have been permitted to pass upon in relation to the construction, maintenance and use of the sewer system and catch basins. (*Volkman* v. *M. R. R. Co.*, 134 N. Y. 418; *Ware* v. *Dos Passos*, 162 N. Y. 282.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent. The record is destitute of any competent proof that the sewer was wrongfully, improperly, carelessly and negligently constructed and built. (*Munk* v. *City of Watertown*, 67 Hun, 264; *Hughes* v. *City of Auburn* 21 App. Div. 319; *Martin* v. *City of Brooklyn*, 32 App. Div. 412; *Munn* v. *City of Hudson*, 61 App. Div. 348; 1 S. & R. on Neg. [5th ed.] § 271.)

BARTLETT, J.   This action was brought to recover for injury to personal property caused by the flooding of the premises No. 716 East 169th street, between Washington and Park avenues, in the borough of the Bronx, city of New York, on the 24th day of August, 1901.

The sole question presented by this appeal is whether the plaintiff offered any evidence that should have been submitted to the jury.

The plaintiff, in attacking the judgment dismissing the com-

plaint, is entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in his favor. (*Ladd* v. *Ætna Ins. Co.*, 147 N. Y. 478, 482; *Higgins* v. *Eagleton*, 155 N. Y. 466; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341, 349; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201, 208; *McDonald* v. *Metropolitan Street Railway Co.*, 167 N. Y. 66; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345, 347.)

In the latter case the court said: "The defendant in its effort to sustain the judgment is confronted by the rule so frequently laid down in this court that we have nothing to do with the weight of evidence; that if a question of fact is fairly presented it should have been submitted to the jury.

"In a very recent case (*McDonald* v. *Metropolitan Street Railway Co.*, 167 N. Y. 66) this court reviewed the authorities and approved the rule laid down in *Colt* v. *Sixth Ave. R. R. Co.* (49 N. Y. 671) as follows: 'It is not enough to justify a nonsuit that a court on a case made might in the exercise of its discretion grant a new trial. It is only where there is no evidence in law, which, if believed, will sustain a verdict, that the court is called upon to nonsuit, and the evidence may be sufficient in law to sustain a verdict, although so greatly against the apparent weight of evidence as to justify the granting of a new trial.'

"In *Bagley* v. *Bowe* (105 N. Y. 171, 179) the rule is thus stated by Judge Andrews: 'The trial court or the General Term is authorized to set aside a verdict and direct the issue to be retried before another jury, if in its judgment the verdict is against the weight or preponderance of evidence, but in a case which of right is triable by a jury the court cannot take from that tribunal the ultimate decision of the fact, unless the fact is either uncontradicted or the contradiction is illusory, or where, to use a current word, the answering evidence is a 'scintilla' merely.' "

Stated in brief, the plaintiff sought to recover upon three principal grounds: (1) That the whole sewer system involved in this action, which is known as the Mill brook watershed,

containing from fifteen hundred to two thousand acres, was inadequate both in original construction and also in maintenance; (2) that the catch basins were insufficient in number and size; (3) that the catch basins and sewers were negligently allowed to remain in an improper condition, by reason of being clogged with earth, sand and other foreign matter to such an extent that they were incapable of carrying off the water in heavy rain storms.

The contents of the sewer in East 169th street flows westwardly into what is known as the Webster avenue trunk sewer, which runs southerly for six miles and empties into the Bronx Kills at the east mouth of the Harlem river. The Webster avenue trunk sewer terminates some two miles north of the Harlem river, at which point it discharges into the Brook avenue sewer. The trunk sewers were constructed in sections and at different times; the Brook avenue was completed to 165th street in 1879; the Webster avenue to 184th street in 1885 and to 205th street, the northerly limit of the water shed, in 1899; in the spring or summer of 1900 the Williamsbridge sewer system, covering several hundred acres and not being a part of the Mill brook water shed, was connected with the Webster avenue trunk sewer. The Webster and Brook avenue sewers aggregated some six miles in length, and with the lateral sewers of the watershed represented a sewer system of about one hundred and seventy-eight miles.

It appears that on the 24th day of August, 1901, it commenced raining at midday and at six P. M. there had been a rainfall of two and forty-seven hundredths inches; between one and two o'clock there fell an inch and eight-hundredths. Another rain storm is involved in this action, which occurred on the fifth day of July, 1901. It commenced raining at one forty-five P. M. and at five P. M. two and ninety-four hundredths inches of water fell; it continued to rain moderately until ten thirty P. M., during which time thirteen-hundredths of an inch more fell.

It is a conceded fact that the portion of East 169th street, in which the flooded premises are located, is much lower

than the surrounding territory. There is a very considerable decline in 169th street from the east, and also a descending grade from the west, making this locality unusually subject to inundation unless a proper sewer system is furnished and maintained.

The contention of the plaintiff is that the flooding on the day in question was not only due to accumulated surface water that the catch basins, by reason of previous clogging, failed to conduct into the sewer, but also to the backing up of the sewer through sinks and water closets into the house.

The defense interposed by the city in its answer reads as follows : " That if any damage arose to the plaintiff, it was occasioned in consequence of a storm of unusual severity in which a very large and unusual quantity of rain fell, and other conditions intervened arising from those circumstances which the defendant had no reason to anticipate and was helpless to guard against."

According to the proofs introduced by the city, it was insisted that the flooding of the premises in question was due wholly to the inability of the catch basins, even if in perfect working order, to carry off the constantly accumulating surface water during a sudden storm, and that the question of the sufficiency of the sewers was in no way involved.

The city also introduced evidence bearing upon the original construction of the sewer system in the Mill brook watershed.

A careful perusal of the record satisfies us that the plaintiff's evidence was sufficient to carry the case to the jury. There was evidence as to previous overflows in this locality and numerous complaints served on the proper city authorities ; the earliest of these was in 1896 ; several witnesses testified to the fact that at the time of floodings, waters set back through the closets and sinks in the houses, as well as flowed over the curb from the street ; that the covers of manholes in Webster avenue and 169th street were blown into the air from two to four feet, and a large stream of water followed.

The plaintiff also proved by a civil engineer that the forcing off of the manhole covers was evidence of stoppage in one or

more sewers by foreign material and a backing up of the water therein.

The plaintiff also introduced evidence as to the condition of the catch basins just prior to this storm, tending to show that they were not in working order; also other evidence not necessary to examine in detail.

We express no opinion as to the merits of this controversy, or the weight of the evidence, desiring that the new trial shall proceed under all the issues without prejudice to the rights of either party.

It is clear that under the rule of law already adverted to, the learned trial judge was in error when he refused to submit this case to the jury.

The judgments of the Trial Term and the Appellate Division should be reversed and a new trial granted, with costs to the plaintiff in all the courts to abide the event.

HAIGHT, J. I concur for reversal upon the ground that the evidence presented a question of fact for the determination of the jury, as to whether the defendant was guilty of negligence in failing to exercise reasonable care to keep the sewer and catch basins free from obstruction.

PARKER, Ch. J., O'BRIEN, VANN, CULLEN, WERNER, JJ., (and HAIGHT, J., in memorandum), concur.

Judgments reversed, etc.