(98 App. Div. 594)

### McARDLE v. GERMAN ALLIANCE INS. CO. et al.

(Supreme Court, Appellate Division, Third Department. November 22, 1904.)

1. INSURANCE—LESSORS—INSURABLE INTEREST.

Where plaintiff leased certain land to deceased for a term, and deceased erected an icehouse thereon, plaintiff had an insurable interest as landlord in such property.

2. SAME—ACTION ON POLICY—CONTRACT LIMITATIONS—ESTOPPEL.

Defendant insurance company, on sustaining a loss under a policy payable to plaintiff as landlord as his interest might appear, made a draft in settlement of the loss, payable to both plaintiff and insured, and intrusted it to its agent for delivery, requiring both plaintiff and insured to indorse the same and sign a receipt. Plaintiff demanded the entire proceeds of the insurance, and, his right to receive the same being denied by insured, plaintiff refused to sign, whereupon insurer's agent sent it back to defendant. Shortly thereafter defendant paid the entire amount of the insurance to insured, taking a bond to indemnify it against claims by plaintiff, who did not ascertain such fact until a week before an action against defendant to recover the loss, which was more than a year after the fire. *Held*, that defendant was estopped to deny liability on the ground that the suit was not begun within 12 months after the fire, as required by a provision of the policy.

Parker, P. J., and Houghton, J., dissenting.

Appeal from Trial Term, Albany County.

Action by Patrick J. McArdle against the German Alliance Insurance Company, impleaded with the Union Trust Company, as executor of the estate of Edward C. White, deceased. From a judgment in favor of defendant insurance company, plaintiff appeals. Reversed.

On the 3d day of January, 1899, the defendant insurance company issued a policy of fire insurance in the standard form of this state to Edward C. White, by which it insured an icehouse, including machinery and appurtenances, which had been erected by him upon land owned by the plaintiff, and which had been leased by the plaintiff to White for a term beginning January 1, 1898, and ending October 1, 1899, at a rental of $700 per year, payable in advance. The policy contained the following clause: "Loss, if any, payable to P. J. McArdle, as interest may appear." The policy also contained the following provision: "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after the fire."

On May 27, 1899, while said policy was in full force and effect, the icehouse was totally destroyed by fire, of which notice was duly given to and proofs of loss therefrom were duly served upon the insurance company. The damage by fire exceeded the amount of the policy, and the insurance company caused its draft in writing to be issued for $2,000, the amount of the policy, payable to said Edward C. White and the plaintiff, who is the person to whom the loss was made payable by the policy as stated, and sent the same, with a receipt to be signed by said White and the plaintiff, to its agent. The agent then went to the plaintiff, and the only evidence as to what then occurred is the testimony of the plaintiff, which is as follows: "Mr. Austin came and saw me, and said that he had a draft; in fact, he showed me the draft; that is, with a receipt attached to it for $2,000, made payable to White and myself, and I claimed I wanted the draft to get Mr. White to sign it to apply upon the rent. He said he couldn't do that. Mr. White gave orders he would only pay $1,000 on account. I told him I wouldn't receive the $1,000; I wanted the whole $2,000 to apply upon the rent. He said he couldn't do that. I says: 'I won't sign the receipt.' He says, 'I think it is better for

---

¶ 1. See Insurance, vol. 28, Cent. Dig. § 147.

you to sign this receipt, because the insurance company won't pay either you or Mr. White before the both of you sign this agreement.' 'Well,' I says, 'let them hold it if they don't. Let them hold it for me for my account, because it is going to apply upon this rent; I will take nothing less than $2,000.' He says, 'All right, but I think you are foolish, because here is the money, and I would advise you to settle it up and take $1,000 and let Mr. White take $1,000. There is no use holding this money, because neither one of you can use this, and neither one of you can get it until both of you sign it.' Q. Do you mean by both of you indorsing the check? A. Both of us indorsing the check and signing the receipt. Q. What did you say to that? A. I told him I wouldn't take nothing less than the $2,000. 'All right,' he says, 'I will hold the check or send it back to the company.' Either one, I can't remember which he said. * * * Q. Then he told you if you didn't take it he would send it back? A. If I didn't sign it; I don't know whether he would send it back or keep it; that neither one of us could get the money." Thereafter the said insurance company, without the knowledge or consent of the plaintiff, and with knowledge of plaintiff's interest in said policy, caused said draft to be returned to it, and it thereafter issued its second draft for $2,000, the amount of its obligation under said policy, and in payment therefor, and made the same payable to the order of Edward C. White, and Edward C. White thereafter cashed said draft and took and appropriated said $2,000 to his own use and benefit, and did not then, nor did he nor said insurance company at any time subsequent thereto, pay any part of said sum to the plaintiff. At the time said insurance company paid said loss to White it took back a bond of indemnity, signed by said White and another, which recited plaintiff's claim to and interest in said $2,000, the amount of the loss sustained under said policy, and which agreed to indemnify and save the said insurance company harmless therefrom. The plaintiff did not discover the fact, nor know that the insurance company had withdrawn and canceled the first draft it had issued, and had paid the amount of the loss and claim under said policy to said White, and had received a bond of indemnity against plaintiff's claim as stated, until a week prior to March 23, 1903, the date this action was commenced.

This action is brought against the insurance company and the executor of the will of said White, who is now dead. The court found the facts substantially as herein recited, and as conclusions of law he found: "First. That the plaintiff ought not to have and maintain his action against the German Alliance Insurance Company, because the same was not commenced within 12 months next after the fire. Second. That the complaint as against the German Alliance Insurance Company should be dismissed with costs. Third. That the plaintiff, under the conditions of said policy, was entitled to have and receive, in the first instance, the entire sum of $2,000. Fourth. That the plaintiff is legally and equitably entitled to the money received by Edward C. White from the German Alliance Insurance Company, under the policy herein described, and is entitled to follow it in the hands of the defendant the Union Trust Company of Albany, as executor under the last will and testament of Edward C. White, deceased. Fifth. That the plaintiff is entitled to recover from the Union Trust Company, as executor as aforesaid, the sum of $1,225, with interest thereon from October 1, 1899."

The plaintiff only appeals.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.·

George T. Kelly (Franklin M. Danager, of counsel), for appellant.
Buchanan, Lawyer & Whalen (Robert E. Whalen, of counsel), for respondents.

CHASE, J. The plaintiff is more than an appointee of White. He had an insurable interest in the property as the landlord. By the terms of the policy the loss was payable to him as his interest might appear, and the trial court has found as a conclusion of law that the

plaintiff was entitled to have and receive from the company in the first instance the entire sum of $2,000, and there is no contention now in this court that the plaintiff would not be entitled to maintain this action if he had commenced it within 12 months next after the fire. The contractual limitation is a part of the standard form of insurance policies issued in this state pursuant to statute, and unless the defendant has waived the limitation, or it is estopped from asserting the same, it is a complete defense to the action. An insurance company may waive the limitation or estop itself from asserting it. 13 Am. & Eng. Ency. of Law, 390; Gibson Electric Co. v. Liverpool & London & Globe Co., 159 N. Y. 418, 54 N. E. 23.

The only question for our consideration is whether the defendant in this case is estopped from insisting that the action was not brought within the time prescribed by the contract. It is said that but slight evidence is required to sustain a waiver or an estoppel as against such a provision. Arthur v. Homestead Fire Ins. Co., 78 N. Y. 462, 34 Am. Rep. 550. The insurance company never at any time denied its liability under the terms of the policy, and it never refused to pay the same for any reason whatever. After the fire it promptly issued its draft for the full amount of the policy, in recognition of its liability to pay the same. Such draft was payable to both White and the plaintiff, but the company having failed to obtain a receipt signed by both of the payees named in the draft at once, without plaintiff's knowledge or consent canceled the draft so issued by it, and issued another draft for the same amount, payable to White, which it delivered to him in payment of the loss. On the delivery of the draft to White the company received from him a bond, with a surety, in which bond the claim of the plaintiff was recognized, and by the conditions of which the obligees therein agreed to indemnify the company against any claim on the part of the plaintiff for the amount of the fund so transferred to White. The plaintiff does not claim that there was an express waiver of the limitation, and, while mere silence and inaction are insufficient on which to base an implied waiver or on which to found an estoppel, any conduct on the part of a company which is fairly calculated to induce a beneficiary to delay bringing an action on a policy, and causes him to believe that the limitation will not be insisted upon, is sufficient to estop a company from asserting a limitation as a defense to an action on the policy. The statements to the plaintiff were not only to the effect that the amount of the policy would not be paid to White without the plaintiff's assent, but the plaintiff may have understood and believed from what was said to him that the $2,000 would be held as a fund for the payment of the loss under the policy, pending the adjustment of the dispute between White and himself. The statements made to the plaintiff left the matter open for future negotiations, and the payment to White was a violation of the statements to and agreements with the plaintiff. No question is made in this court in regard to the authority of the agent, Austin. The testimony before us is undisputed, and on such undisputed testimony the complaint, as against the defendant company, should not have been dismissed.

The appellant insists that the judgment should be reversed, and that this court should direct the judgment to be entered in favor of the

plaintiff against the insurance company. On a new trial the insurance company may produce other evidence materially affecting the findings of fact relating to the merits of the controversy.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except PARKER, P. J., and HOUGHTON, J., who dissent.