ESTHER WALSH, Appellant, *v.* THE METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

*Dismissal of a complaint — favorable position of the plaintiff on an appeal therefrom — life insurance policy — waiver of a condition that an action thereon be brought within a certain time after the death of the insured — effect of statements made by the assistant superintendent of the insurance company and of the acceptance of premiums after such death.*

On an appeal from a judgment, entered upon the dismissal of the complaint in an action at law by direction of the court, the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given, and to every legitimate inference warranted by the proof.

In an action upon a policy of life insurance containing a provision that no action could be maintained thereon after six months from the date of the insured's death, it appeared that the policy was issued March 30, 1891; that on July 26, 1892, the insured was committed to an insane asylum, where he remained until he died, May 30, 1894; that the beneficiary, who had continued to pay the insurance premiums, did not learn of the insured's death until July, 1895, when she immediately informed the defendant thereof and filed proofs of death; that the defendant having refused to pay the claim, the beneficiary, within six months after the time when she ascertained that the insured was dead, and about a year and eight months after such death, commenced the present action.

The beneficiary gave evidence tending to show that while the insured was still alive and up to the time when she learned that he had died, she had several conversations with the defendant's assistant superintendent, in which she stated to him her desire to drop the policy, because she was unable to ascertain whether the insured was alive or dead, but that the assistant superintendent

induced her to continue her payments by representing to her that if she did the company would pay the policy if they were notified of the insured's death as soon as she heard of it.

The policy contained the. following provision: "Agents are not authorized to make, alter or discharge contracts, to waive forfeitures or to receive premiums on policies in arrears after the time allowed by the rules and regulations of the company."

*Held,* that the defendant could waive, or estop itself from asserting, the provision of the policy requiring that an action thereon must be commenced within six months after the death of the insured;

That such a waiver or estoppel might be predicated upon the alleged statements of the assistant superintendent, and also upon the act of the defendant in taking the plaintiff's money, under the circumstances of this case, after the death of the insured;

That, upon the evidence, the question whether there had been such a waiver or estoppel was one of fact for the jury to determine, and that it was improper for the court to dismiss the plaintiff's complaint.

Appeal by the plaintiff, Esther Walsh, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 14th day of April, 1903, upon the dismissal of the complaint by direction of the court after a trial at the Albany Trial Term.

*John W. Roddy,* for the appellant.

*D. C. McElwain,* for the respondent.

Chase, J.:

This is an action on a policy of life insurance. On this appeal the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given and to every legitimate inference warranted by the proofs. (*Sergent* v. *Liverpool & London & Globe Ins. Co.,* 155 N. Y. 349; *Sundheimer* v. *City of New York,* 176 id. 495; *McDonald* v. *Metropolitan St. R. Co.,* 167 id. 66.)

On the 7th day of February, 1890, one Mary Brennan, then residing with the plaintiff, made application to the defendant for a policy of insurance of $500 on the life of her uncle, Edward Brennan. A policy was issued pursuant to said application and it was delivered to the plaintiff. A few months thereafter it was ascertained that a cousin of Edward Brennan had a policy of insurance on his (Edward's) life in the defendant company, which had

been issued prior to the policy payable to Mary Brennan. The policies were then compared and it was ascertained that in the application for the first policy the age of the insured was given three years older than as stated in the application for the policy issued to Mary Brennan. On December 27, 1890, plaintiff, assuming that she owned the Mary Brennan policy, certified in writing that she was the beneficiary under that policy and asked that an indorsement be made thereon recognizing Edward Brennan's age as three years older than as stated in the application for the policy. The plaintiff also stated that she was the aunt of Edward Brennan and also his creditor, and asked that the policy be made payable in her name and not in the name of her niece, Mary Brennan, and a new application was then prepared and signed by the plaintiff, and on filing such new application, the policy payable to Mary Brennan was canceled and a new policy was issued and delivered to her which is the policy in suit. The new policy is dated March 30, 1891. On the 26th day of July, 1892, Edward Brennan, then in the Albany Almshouse Hospital, was committed to the Utica State Hospital for the Insane, and there remained until he died on the 30th day of May, 1894. Plaintiff continued to pay the premiums on said policy to and including the payment of a three months' premium in advance on June 26, 1895. She did not know that Edward Brennan was dead until July, 1895, and she went immediately and notified the superintendent of the defendant in Cohoes where she resided, and proofs of death were prepared and delivered to the defendant. The defendant took some weeks to investigate the claim and then declined to pay it. This action was commenced within six months after the time when the plaintiff ascertained that said Edward Brennan was dead. The defendant insists that the plaintiff made false representations and warranties to it in her application for the policy and that by reason of said false representations and warranties said policy is wholly void. The policy is not based on verbal representations and warranties but on the representations and warranties contained in the written application. On the trial the defendant offered in evidence an application which purports to be signed by the plaintiff for the policy in suit, and the person who solicited the insurance testified that the signature thereto is the signature of the plaintiff and that such paper is

the application on which the policy was issued. The plaintiff admits that she signed a written application for the policy, but denies that the signature to the paper produced is her signature, and her niece testified that the signature to such alleged application was not the signature of her aunt, the plaintiff. There was, therefore, a clear question of fact before the trial court as to what, if any, representations and warranties the plaintiff had made in the application for the policy. If the paper presented as the application for the policy in suit was not in fact signed by the plaintiff and was not in fact the application on which the policy was issued, there was nothing before the court to show that the plaintiff had made any false warranties. Defendant also contends that the action should not be maintained because it was not commenced within six months from the death of the insured.

Plaintiff's policy provides: " No suit shall be brought nor action commenced against said company under this policy until ten days shall have expired after the filing of proofs of death upon all the forms prescribed by the company in its home office, nor after six months from the date of death of the insured ; it being understood and agreed that, if any such suit or action be commenced after said six months, the lapse of time shall be taken to be conclusive evidence against any claim. The provisions of any and all statutes of limitations to the contrary being hereby expressly waived."

This action was not commenced until about one year and eight months after Brennan's death, and such provision of the policy is a complete bar to this action unless the defendant is estopped from asserting it.

The plaintiff claims that the defendant is estopped by reason of the statements made to her from time to time by its assistant superintendent in Cohoes. The evidence on which the plaintiff relies was given by herself and her said niece. Plaintiff's evidence relating thereto is as follows : " Q. And when did you have conversation with Morrissey and what was that conversation about dropping the policy ? A. I said I wanted him to cancel the policy; that I wouldn't pay any longer because he (Brennan) might be dead and that ' I am not able to go there and I can't go and look after him, I will drop it.' He said, ' No, keep on the policy ; when you hear of his death the company will pay you.' That's what he said. * * *

Q. Now will you just state what you told Morrissey and what he said to you about dropping the policy after Brennan being dead? A. I told him when I couldn't hear — I wrote different times and I could get no answer, and I said — * * * Q. Now go ahead and state. A. When I couldn't hear from him I told him I would drop his policy. Yes, I told Morrissey I couldn't hear from him ; he said, 'Keep on the policy; when you hear of his death the company will pay you.' Upon that I kept the policy up ; upon those grounds I kept it up ; kept it up for over a year ; for over a year and three months. * * * Q. Did you have other talks with Mr. Morrissey at your house to the same effect? A. Yes, sir, at different times ; about four times, I think ; I am not sure of that ; I am sure he said to me, 'You keep the policy up, and when the company is notified they will pay.'"

The testimony of the niece, referring to the plaintiff, relating thereto is as follows : "She said she didn't want to be paying out so much money when she had written there several times and they didn't answer the letters, and she didn't know whether he was dead or not; he said, well, that wouldn't make any difference. 'You keep on paying the premium and when you hear of his death (keep on inquiring), as soon as you hear of his death you bring the policy and books and you will get your money ; make out your proof of death.' * * * The first conversation in regard to that was after the holidays, about in February, 1894. The next time he came to collect after the holidays ; it was, in my best judgment, about February, 1894 ; she always paid every three months ; I was present in the house every time he came ; after that she reminded him about it ; the substance of the conversation was he told her the same thing, to keep on paying and try to find out."

She further testified : "I stated that this first conversation had between Morrissey and Mrs. Walsh, in which he advised her not to drop the policy, but to keep it up, was in February, 1894 ; was present at another conversation two or three months later ; she paid every two or three months ; every time after that that she paid the money she objected to paying out so much money ; he said she would surely get it; that there was no fear ; that they had other cases where they had people that were dead quite a while and they paid them without any fault when proofs of death were in."

These alleged conversations commenced while Brennan was alive and continued after he was dead, and down to the time when plaintiff ascertained that he was dead. She notified the defendant as soon as she was informed of Brennan's death.

The defendant could waive the provisions of the policy requiring that an action thereon must be commenced within six months after the death of the insured or estop itself from asserting such limitation. (*Gibson Electric Co.* v. *Liverpool & London & Globe Ins. Co.,* 159 N. Y. 418; *McArdle* v. *German Alliance Ins. Co.,* 98 App. Div. 594.)

If the jury had believed the testimony given by the plaintiff and her niece they could have found that the plaintiff, being unable to ascertain whether Brennan was dead or alive, was induced to continue the payments to the defendant on account of said policy from February, 1894, to September, 1895, by reason of the repeated statements of the defendant's assistant superintendent that it would not make any difference to her if Brennan was dead; that she would surely get the money when she ascertained that he was dead and that there was nothing to fear and, in substance, that they had had such cases before. The jury could also have found that the defendant retained to itself the premiums so paid for more than a year after Brennan's death, and then insisted that by the terms of the policy the time for bringing an action thereon had long since expired. The defendant by taking the plaintiff's money in the way that she claims that it was obtained and then enforcing the strict language of the policy, defrauds the plaintiff.

The policy provides : " Agents are not authorized to make, alter or discharge contracts, to waive forfeitures or to receive premiums on policies in arrears after the time allowed by the rules and regulations of the company." The courts are reluctant to assist insurance companies to enforce the strict language of insurance contracts when the insured are misled by false statements made to them by agents selected by the insurers. In *Steinbach* v. *Prudential Ins. Co.* (62 App. Div. 133) the court, in referring to a mistake or fraud in designating a beneficiary in a policy, say : " The company having collected and retained the premiums is chargeable with the fraud or mistake of its agent constructively at least in inducing the making of the contract and the acceptance of the policy regardless of

whether it had knowledge of such fraud." The courts have frequently asserted that the right of insurance companies to restrict liability for acts of their agents will not be recognized when by so doing the contracts will become tainted with fraud. In *Stewart* v. *Union Mutual Life Ins. Co.* (155 N. Y. 257) the court say : " Insurance companies have a right to have their contracts construed under the rules recognized in construing other contracts. Ordinarily the principal is bound by the contract of his agent where he acts within the scope of his authority. But insurance companies have generally sought to relieve themselves from this liability by inserting clauses in the application and policy restricting the powers of agents and their liability thereunder. This right in insurance companies we must recognize unless by so doing their contracts would become tainted with fraud, and in such cases we will presume that a waiver was intended rather than fraud."

Proofs of death were filed by the plaintiff at once upon her ascertaining that Brennan was dead. (See *Trippe* v. *Provident Fund Society*, 140 N. Y. 22.)

We do not intend to express an opinion upon the merits in this case, but on the record now before us the plaintiff was entitled to have submitted to the jury the question as to whether the paper produced by the defendant was the application signed by the plaintiff and used as the basis for the contract contained in the policy, and as to whether the defendant was estopped from asserting that the action was not commenced within the time provided by the contract, and it was error for the court to dismiss the plaintiff's complaint.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to the appellant to abide the event.