## SHERRY v. FEDERAL TERRA COTTA CO.

(Supreme Court, Appellate Division, First Department.   April 7, 1916.)

1. APPEAL AND ERROR ⬤⟳927(3)—COMPLAINT—DISMISSAL—INFERENCES.

Where plaintiff's complaint was dismissed at the close of plaintiff's case, he was entitled on appeal to the benefit of every fact that the jury might have found from the evidence given, and to every legitimate inference thereby warranted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3748, 4024; Dec. Dig. ⬤⟳927(3).]

2. CONTRACTS ⬤⟳323(3)—BUILDING MATERIALS—BREACH—EVIDENCE.

In an action to recover for breach of contract in failing to furnish terra cotta trim for plaintiff's building, evidence *held* sufficient to take to the jury the question whether defendant refused to proceed with the work unless paid more money than agreed, and falsely stated that the original contract had been canceled by the plaintiff's architect, constituting an anticipatory breach of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1544; Dec. Dig. ⬤⟳323(3).]

3. CONTRACTS ⬤⟳316(1)—BREACH—ACQUIESCENCE.

Assuming that defendant breached its contract to supply terra cotta trim for plaintiff's building, the fact that plaintiff did not act upon such breach and order the terra cotta elsewhere, but negotiated with defendant for a new contract, was not an acquiescence in such breach, where such action on plaintiff's part was induced by defendant's false statement that the original contract had been canceled by plaintiff's architect, which statement plaintiff believed and relied upon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1480–1482; Dec. Dig. ⬤⟳316(1).]

Page, J., dissenting.

Appeal from Trial Term, New York County.

Action by Louis Sherry against the Federal Terra Cotta Company. From a judgment dismissing his complaint and awarding damages to defendant on a counterclaim, and from an order denying his motion for a new trial, plaintiff appeals. Reversed, and new trial ordered.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, PAGE, and DAVIS, JJ.

Thomas M. Rowlette, of New York City, for appellant.
William O. Gantz, of New York City, for respondent.

SCOTT, J.   The plaintiff sues for damages for defendant's refusal to fulfill a contract to furnish terra cotta trim for a building erected by plaintiff. Defendant counterclaims for damages arising out of plaintiff's refusal to fulfill the same contract. That the contract was made, and that it was never fulfilled by either party, is conceded, and the ultimate question involved is as to which party is chargeable with the breach.

At the trial the court dismissed the complaint, and submitted the question as to the amount of defendant's damages to the jury, thus deciding, as matter of law, that it was plaintiff who breached the contract. The only question we have to pass upon is as to the accuracy

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of this ruling, for plaintiff conceded upon the argument that, if he is liable for any damages, the amount awarded by the jury is not excessive.

[1] The complaint was dismissed at the close of the plaintiff's case, and he is entitled upon this appeal to the benefit of every fact that the jury might have found from the evidence given, and to every legitimate inference warranted by such evidence. Walsh v. Met. Life Ins. Co., 105 App. Div. 186, 93 N. Y. Supp. 445. In stating the facts, therefore, we are to be understood as following this rule.

In the year 1910 the plaintiff contemplated the erection of a country house, and to that end employed an architect named J. Stewart Barney, whom he authorized to contract, in his behalf, for the terra cotta trim or ornamentation to be used in the construction of said building. Mr. Barney thereupon made a contract with defendant for the furnishing of said terra cotta. This contract consisted of a written proposal by defendant, and an acceptance thereof by Mr. Barney, in behalf of plaintiff. By this contract defendant agreed to furnish the terra cotta for the price of $3,500 delivered f. o. b. at Manhasset, Long Island, payments to be made "by the 10th of the month following the receipt of the material at destination." This agreement was made on April 14, 1910. On April 27, 1911, the architect, although, so far as appears, no work had been done under the contract, and certainly no material had been delivered, gave a certificate that the contractors were "entitled to the first payment, amounting to $1,500, as per contract with Mr. Louis Sherry, April 14, 1910," and on the faith of this certificate plaintiff on May 2, 1911, paid defendant the said sum of $1,500. It is that sum which he now seeks to recover. Unless there was some contract, other than that put in evidence, it seems to be apparent that the architect's certificate was false, in stating that the contractor was entitled to any "first payment," for, as already stated, the only provision in the contract as to payment is that it should be made upon delivery of the material at Manhasset. The plaintiff had not seen the contract, and did not know its terms, before he made the aforesaid payment, relying wholly upon the certificate of his architect.

For some reason plaintiff did not proceed at once with the construction of the building, but did so proceed in the spring of 1912, when he employed another architect and made a contract with a builder. Late in May, 1912, plaintiff, with one of his builders, went to defendant's works to see what had been done about the terra cotta. He found that practically nothing had been done, except to receive or make the working drawings and to make two or three plaster casts. Defendant's representative, when asked why defendant had proceeded no further with the work, replied that he did not believe plaintiff realized what he was getting; that the drawings which plaintiff had seen were on a quarter-inch scale, which did not show the same as the working drawings, which showed a number of nude figures. Upon looking at the working drawings, plaintiff said he did not want those figures, and an agreement was made to substitute conventional urns and plain terra cotta. It was not stated and does not appear

that the substitution then agreed upon would add to the cost of the work. On the contrary, the fair inference from the testimony is that the cost would have been less to defendant. At the time of this visit defendant's representative stated that shipments could be made in about four weeks.

A few days afterwards, when defendant and plaintiff's builders had agreed on the patterns to be substituted, defendant's representative called on plaintiff and informed him that defendant could not proceed with the contract at the agreed price, but must have more money. Plaintiff inquired why this should be so, since the changes agreed upon had simplified the work, whereupon defendant's representative stated that this contract was only the first or second which defendant had made after its organization, and that it had taken it too low, and furthermore that the former architect, Mr. Barney, had written defendant a letter canceling the contract. Plaintiff expressed surprise at the cancellation, of which he had not been informed and had no knowledge; but, accepting as true the statement that the contract had been canceled, he proceeded to negotiate for a new contract, finally agreeing to pay defendant $4,500 for the work, but upon the condition that Barney's letter canceling the contract should be delivered to him, hoping that he might, by its means, compel Barney to make good the extra price he was compelled to pay. Upon these conditions plaintiff agreed to execute a new contract, to be prepared by defendant, at the enhanced price. Such a contract was prepared and sent to plaintiff for execution. The alleged letter of Mr. Barney canceling the former contract was not sent, however.

On June 18, 1912, plaintiff expressed his general approval of the terms of the contract, but requested the insertion of a clause providing for the approval of his then architect, and calls attention to the promise that he should be furnished with Mr. Barney's letter of cancellation. On the following day (June 19th) defendant wrote expressing its willingness to insert a provision for the approval of the architect, but stating that it had never received any instructions from Mr. Barney to cancel the contract, but had been instructed by him on June 28th (of what year is not stated) to stop all progress of the manufacture of the terra cotta pending receipt of final information as to procedure. The contract thus submitted to plaintiff for execution provided that the first shipment should be made on October 1, 1912, more than three months after its date, and that the balance should be delivered as fast as possible consistent with good workmanship. On June 21, 1912, plaintiff replied, reiterating the fact that he had been led to agree to a new contract by the statement that Mr. Barney had canceled the earlier one, and also noting the fact that he had been promised that deliveries would be commenced in four weeks, whereas the proposed contract allowed the defendant nearly four months within which to begin deliveries. His letter concluded as follows:

"Under these circumstances I insist upon your carrying out the contract made with Mr. Barney for me, and delivering within four weeks the terra cotta which you said would be ready in that time for the first story, eliminating the grotesque figures which we agreed should be eliminated."

Having received no answer to this letter, plaintiff, on June 27th, wrote to defendant that he should place his order elsewhere, and should expect a refund of the money paid under the original contract. Defendant's reply to this letter, dated June 29th, was to demand an additional sum for the cancellation of the contract. It did not state a willingness to complete the contract made with it by Mr. Barney.

[2, 3] In this state of the evidence as it stood at the close of the plaintiff's case, we are of opinion that a question of fact was presented which should have been submitted to the jury. As has been said, the basic question in the case was whether the breach of the contract of April, 1910, was attributable to plaintiff or defendant, and upon the evidence adduced by the plaintiff the jury certainly might have found that when defendant refused to go on with the work unless it was paid more money than had been agreed upon, and falsely stated, as a reason why it could not be required to go on under the old contract, that that contract had been canceled, it repudiated the contract and committed an anticipatory breach, which relieved plaintiff from any obligation under it. That plaintiff did not at once act upon this breach and order his terra cotta elsewhere, but negotiated with defendant concerning a new contract, is not to be deemed an acquiescence in defendant's breach, because all that plaintiff did in that regard was induced by the false statement that the original contract had been canceled, a statement which he believed and upon which he relied. That defendant intended to repudiate its obligations under the contract of April, 1910, is further indicated by the fact that when plaintiff, having learned the truth, insisted upon the completion of the original contract, defendant never expressed its willingness to abide by it. If, as the jury might well have found upon the evidence, it was defendant which repudiated and broke the only contract between the parties, the plaintiff was entitled to have the question of his damages passed upon.

For these reasons, the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. Order filed.

CLARKE, P. J., and LAUGHLIN and DAVIS, JJ., concur.

PAGE, J. (dissenting). In my opinion it is immaterial whether there had been breaches of the original contract prior to June 21, 1912, for the reason that on that date, with full knowledge, the plaintiff wrote demanding performance on the part of the defendant, thereby waiving any prior breaches on the part of the defendant. There is no request for a reply in this letter; the only condition imposed was that the defendant should deliver within four weeks the terra cotta for the first story of the building. There is no evidence that defendant refused to proceed with the work after receiving plaintiff's demand of June 21st, and therefore nothing to justify the plaintiff's repudiation of the contract on June 27th. A mere delay of six days in answering a letter, where no reply was requested, was clearly not a breach of the contract by the defendant, nor equivalent to a refusal to perform.

The judgment should be affirmed, with costs.